JAMES L. RANKIN, EXECUTOR OF THE ESTATE OF RICHARD B. TURNER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53554. Promulgated December 20, 1935.

*John W. Townsend, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, and *John W. Smith, Esq.*, for the respondent.

SMITH: In the above entitled proceeding the Board, on June 21, 1935, issued the following order:

On June 5, 1935, this Board received from the Circuit Court of Appeals for the Third Circuit an order in the above-entitled proceeding reading as follows:

> "Upon consideration of the mandate of the Supreme Court of the United States filed herein on the 27th day of May, 1935, and upon the agreement in open court by counsel for both parties hereto, the decision of the United States Board of Tax Appeals is reversed and the proceeding remanded to said Board for a rehearing and findings with respect to what, if any, shares were designated to the broker as those to be sold or those to be held, and with directions to enter its decision in conformity with the opinion of the Supreme Court of the United States."

Pursuant to such mandate, it is

ORDERED that this proceeding be and the same hereby is restored to the Day Calendar of October 1, 1935, for presentation of such evidence as the petitioner and the respondent desire to present for the purpose of enabling the Board to determine "what, if any, shares were designated to the broker as those to be sold or those to be held", pursuant to the mandate.

At the rehearing on October 1, 1935, the petitioner presented the same witnesses as at the first hearing on April 27, 1932, viz., James L. Rankin and Thomas McDougal. The respondent in his behalf presented as witnesses, John V. Carey, customers' man for West & Co., brokers, from 1926 to 1930, inclusive, and Frederick D. Bendler, a revenue agent.

In our former report in this case, 26 B. T. A. 1204, we made the following finding of fact:

\* \* \* In giving orders to his broker to sell 1,300 shares of the stock in 1928, the decedent did not specify any particular shares to be sold. An employee of the broker understood, however, that the decedent desired to retain 1,200 shares to take the place of the bonds which he had received from his father. \* \* \*

This finding was based upon the testimony of James L. Rankin at the hearing on April 27, 1932, that in giving orders for sales of Turner's stock he did not specify any particular shares to be sold, and that:

So far as Mr. Turner was concerned and West & Company were concerned they knew his desires and feelings about the 1,200 shares of U. G. I. For myself I had discussed it with Mr. Carey of West & Company, and he knew Mr. Turner's feelings about that, the 1,200 shares.

There was no other evidence before the Board which warranted the finding. The case was originally tried upon the proposition that a mere intention on the part of a margin trader to sell lots of stock purchased at different dates and carried in the margin trading account was all that was necessary to take the transaction out of the so-called "first in, first out" rule.

The Supreme Court, in *Helvering* v. *Rankin*, 295 U. S. 123, reversing the decision of the Circuit Court of Appeals for the Third Circuit in *Rankin* v. *Commissioner*, 73 Fed. (2d) 9, said:

* * * The required identification is satisfied, if the margin trader has, through his broker, designated the securities to be sold as those purchased on a particular date and at a particular price. It is only when such a designation was not made at the time of the sale, or is not shown, that the "First-in, first-out" rule is to be applied.

\*          \*          \*          \*          \*          \*          \*

*Third.* If the facts found by the Board of Tax Appeals had been what the Court of Appeals assumed them to be, there would have been such an identification of shares sold with shares purchased as to preclude the Commissioner from applying the "First-in, first-out" rule. The Court of Appeals assumed that, "What Turner did in this case, acting and speaking through his attorney, was to communicate to his broker his intention to hold for investment the shares of U. G. I. he originally purchased." The facts found by the Board of Tax Appeals do not bear out this assumption of the court. The Board's findings were that, "The decedent [Turner] always intended to retain the ownership on margin of 1,200 shares of the United Gas Improvement Co. stock"; and that, "An employee of the broker understood * * * that the decedent desired to retain 1,200 shares to take the place of the bonds which he had received from his father." The difference between the Board's findings and the court's statement of the facts is obviously vital. The court held that Turner's communication of his intention "was in effect an order to his broker not to sell those shares"; that "When, two years later, he ordered the broker to make two sales in lots of 500 shares each, they were, conformably to the original instructions, the 1,000 shares last purchased." But if the employee was told, as the Board found, merely that Turner "desired to retain 1,200 shares [of the U. G. I. stock] to take the place of the bonds which he had received from his father", he would naturally believe that so long as any 1,200 shares of the stock were retained, it was immaterial to which of the lots the sales in 1928 were attributed; and hence there was no identification. Thus it was only by departing from the facts as found by the Board of Tax Appeals that the court found justification for reversing the Board's decision.

At the rehearing of this proceeding, James L. Rankin testified more explicitly concerning his instructions to Mr. Carey, saying:

When Mr. Turner told me definitely that he was going to take an active position in the stocks, I called up Mr. Carey at West & Company. I reminded him of the prior purchases on Mr. Turner's behalf that had been made through me by telephone, and said that Mr. Turner had decided, against my advice, to take an active part in the stock market; that he wanted me to say to Mr. Carey that he had no intention of selling the 1,200 shares that had been purchased using those bonds, but he thought he probably would sell the 300 shares received as dividends. I further said to Mr. Carey that Mr. Turner may from time to time buy and sell U. G. I. shares, but for sentimental reasons it is his intention at all times to keep those 1,200 shares. Mr. Carey said he understood.

The alleged conversation between Rankin and Carey took place in the early part of 1928.

Carey testified that if he had received any such instructions he "would have taken the matter up with the cashier in the office, and

explained his [decedent's] wishes in the matter"; but that he had no recollection of having received any such instructions from Rankin or Turner, the decedent, or anyone else, concerning Turner's margin account. Bendler, the revenue agent, testified that in the audit of Turner's tax return for 1928 he called upon Rankin, who apparently was the only person conversant with Turner's marginal trading in 1928. He stated:

> Then I asked him could he identify the stock sold? And he said no, that he did not have the number of the certificates. West & Company handled the transaction. I then made a recheck of West & Company's records on all of the account, and could find no notation on West & Company's account of any notation when they sold that stock of what stock it applied to. I then asked Mr. Carey would it be possible to identify that stock. Mr. Carey told me it would be physically impossible to identify that stock sold.

At the earlier hearing of this case on April 27, 1932, Rankin testified:

> Neither Mr. Turner nor myself knew until this question was raised by the Government how West & Company handled it, and the only brokerage accounts that I ever had contact with, was with this concern, and neither Mr. Turner nor myself knew how the transaction was handled by West & Company until the question was raised, and I went to West & Company two years after the transaction to find out from them a record of the certificates they had representing this 1200 shares. I went there expecting they could tell me the number of certain certificates for 1200 shares, and for the first time I knew they could not do that. * * *

Rankin also testified at the earlier hearing:

> Q. You just gave an order to the broker to sell 300 shares of the U. G. I., or 500 shares of U. G. I., and you received the notice the following day that so many shares were bought or sold?
> A. That is right, yes.

On brief counsel for the petitioner points out that Rankin testified that Turner wanted him " to say to Mr. Carey that he had no intention of selling *the* 1,200 shares that had been purchased with those bonds, * * * but for sentimental reasons it is his intention at all times to keep *those* 1,200 shares." It is argued that this testimony of Rankin warrants the Board in now finding as a fact, even if the fact could not be found upon the previous record, that Turner always had it in mind to keep the 1,200 shares and that in giving orders to the broker to sell the excess over 1,200 shares of U. G. I. stock, those shares were reserved. We do not think that the entire evidence of record warrants such a finding. Even if Turner had had that intention in the early part of 1928, there is nothing to show that he had not abandoned it before the sales of the U. G. I. stock in question were ordered. The evidence on the rehearing brings out the fact that at some time after 1928 Turner sold through his broker the 1,200 shares of which he was long at the close of 1928.

If, when Turner gave orders to sell lots of U. G. I. stock in 1928, he had indicated to the broker that he was to sell "those purchased on a particular date and at a particular price" or had otherwise clearly instructed the broker as to what particular shares should be sold, he would be entitled to have the profits or losses from the sale computed upon the basis of the cost of the shares designated. This was made plain by the decision of the Supreme Court in this case. But the Supreme Court observed "it is only when such a designation was not made at the time of the sale, or is not shown, that the 'First-in, first-out' rule is to be applied." Quite clearly, in this case, neither Turner nor Rankin designated at the time of the sale the securities to be sold as those purchased on a particular date or at a particular price. We are furthermore of the opinion that the evidence does not warrant a finding that the instruction given by Rankin to the broker in the early part of 1928 amounted to anything more than a communication to the broker of an intention on the part of Turner to continue his long position in U. G. I. stock to the extent of 1,200 shares.

Reviewed by the Board.

*Judgment will be entered for the respondent.*